```
     IN THE UNITED STATES DISTRICT COURT
         WESTERN DISTRICT OF ARKANSAS
              FAYETTEVILLE DIVISION
```

**ARMANDO GUTIERREZ**                                                   **PLAINTIFF**

v.                       Case No.: 09-cv-5189

**DEPUTY KELLEY and**
**DEPUTY HARTMAN**                                                      **DEFENDANTS**

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Armando Gutierrez, an inmate in the Arkansas Department of Correction ("ADC"), filed this civil rights action under 42 U.S.C. § 1983. Pursuant to the provisions of 28 U.S.C. § 636(b)(1) and (3), the Honorable Jimm Larry Hendren, Chief United States District Judge for the Western District of Arkansas, referred this case to the undersigned for the purpose of making a report and recommendation.

### I.   Background

As this case is before the Court on Defendants' Motion for Partial Summary Judgment, the Court will recite the facts pled by the non-moving party, the Plaintiff. Plaintiff has brought this action against the Defendants, Deputy Kelly and Deputy Hartman, alleging that during his incarceration at the Benton County Detention Center ("BCDC") he was denied procedural due process, denied an adequate diet, denied responses to his grievances, and was subjected to excessive force. Defendants have filed a Motion for Partial Summary Judgment (Doc. 21), agreeing the excessive force allegations are not appropriate for summary judgment, but moving for summary judgment on the remainder of Plaintiff's claims.

Plaintiff was booked into the BCDC on August 11, 2009.  (Doc. 34, ¶1).  On August 19, 2009, Deputy Kelly reported that while assigned to E-Pod, he observed Deputy Bailey in a confrontation with Plaintiff.  (Id., ¶3).  Plaintiff was complaining about the quality of the food.  (Id.)  Plaintiff states he was telling Deputy Bailey the biscuits were served while still raw, taking away from the daily calories provided to the inmates.  (Doc. 1, ¶V).  Deputy Bailey told Plaintiff to place his tray on the cart, and Plaintiff moved to comply.  (Id.)  Deputy Kelly then yelled into Plaintiff's left ear and Plaintiff asked him to stop.  (Id.)  Deputy Kelly asked Plaintiff what he "was going to do about it," and Plaintiff replied he was going to put his tray on the cart, as he was asked.  (Id.)  Deputy Kelly then told Plaintiff to place his tray on the floor and his hands on the window.  (Id.)  Plaintiff complied, and Deputy Hartman put his hand on Plaintiff's left shoulder and Deputy Kelly began cuffing Plaintiff's left hand.

When Deputy Kelly began to cuff Plaintiff's right hand he grabbed Plaintiff's thumb and pulled it back so far it "popped" and sent a sharp pain up Plaintiff's right hand and arm.  (Doc. 1, ¶V).  Plaintiff jumped due to the pain, and asked Corporal Acosta to keep Deputy Kelly away from him because Deputy Kelly was causing him pain.  (Id.)  Plaintiff was ordered to relax and return to his knees, and he complied.  (Id.)  Deputy Hartman kept his hand on Plaintiff's left shoulder and Corporal Acosta kept his hand on Plaintiff's right shoulder while Deputy Kelly cuffed Plaintiff's

right hand. (Id.) Plaintiff then requested to see the doctor, and he was taken to St. Mary's hospital for an x-ray which showed his thumb to be swollen and sprained. (Id.) Plaintiff was sent back to the BCDC with medication and orders for an ice pack to be placed intermittently twenty minutes on and off his injury. (Doc. 1, ¶V).

According to Defendants, due to Plaintiff's lack of cooperation with the handcuffing procedure, Deputy Kelly's right little finger was dislocated during the incident. (Doc. 23-3). Deputy Kelly's Incident Report is dated August 19, 2009, the date of the incident, and states Plaintiff was being locked down for assaulting jail staff and was being charged with second degree battery for the injury Deputy Kelly sustained. (Id.) No more information was provided to the Court regarding the resulting disciplinary action, including any Inmate Disciplinary Action Form.

The Incident Report was reviewed by Sgt. Nance, also on August 19, 2009, the date of the incident. (Id.) Plaintiff indicated his pending charges resulting from this incident, perhaps referring to the second degree battery charge although the record before the Court is not clear, were "dismissed" on February 22, 2010. (Doc. 26).

Plaintiff further alleges the disciplinary courts in the jail have no audio recording and the inmates are automatically found guilty. (Id.) As for appeals, Plaintiff states a lieutenant may come at the end of "hole time" to request if the inmate still wants

-3-

to appeal, but that disciplinary actions are not taken as "sincere actions" and there can be no witnesses provided on the inmates' behalf. (Id.)

According to Defendants, whenever there is a violation of the rules, which warrants more than a verbal reprimand, the violation is documented on an Inmate Disciplinary Action Form, which provides notice to the inmate of the disciplinary charge. (Doc. 23, ¶12). However, Plaintiff states he never received any written notice of any charges of the in-house rules or regulations on either August 19, 2009, or on September 18, 2009. (Doc. 34, ¶12). Defendants also state the Inmate Disciplinary Action Form bears the inmate's name, Originating Agency Case Number ("OCA number"), offense that occurred in detail, and signature of the jail official charging the inmate with the offense. (Doc. 23, ¶13). Plaintiff contends his Inmate Disciplinary Action Form, which he did not receive until a year later when he was incarcerated in the ADC, does not contain a description of the charge or a place for the inmate to call witnesses. (Doc. 34, ¶13). As noted above, Defendants have not provided a copy of the Inmate Disciplinary Action Form to the Court.

Defendants further contend that along with the Inmate Disciplinary Action Form, an incident report shall be generated and forwarded to the shift supervisor for a procedural due process hearing - where both the inmate's and the shift supervisor's side of the story can be heard. (Doc. 23, ¶14). After the procedural

due process hearing, the shift supervisor will forward the disciplinary action form, incident form, and action taken to the Jail Lieutenant for review and disposition within twenty-four hours of the incident. (Id., ¶15). The Jail Commander or designee will then review all disciplinary action taken, and copies of the reports will be placed in the inmate's OCA file. (Id., ¶16).

Regarding the undercooked food, Defendants assert that the BCDC contracts with CBM Correctional Food Service to provide all meals to inmates at the BCDC. (Id., ¶5). It is Defendants' position that CBM Correctional Food Service, a non-party to this matter, is responsible for ensuring that all inmates of the BCDC receive the average daily requirements as stated in the Recommended Dietary Allowances, which are 2300 calories per day for sedentary inmates and 2700 calories a day for active inmates. (Id., ¶6).

Robert Holly was the jail administrator during the time Plaintiff was incarcerated at the BCDC. (Doc. 34, ¶5). During his time as the jail administrator, Defendants assert that Captain Holly was once informed that a pan of undercooked biscuits were served to the BCDC inmates. (Doc. 23, ¶7). Defendants maintain that Captain Holly then instructed his Jail Lieutenant, Paul Carter, to make contact with the CBM Correctional Food Service manager on duty and bring the complaint regarding the half-baked biscuits to the CBM Correctional Food Service manager's attention, identify why the error was made, and to make certain it did not occur again. (Id., ¶¶8,9). The CBM Correctional Food Service

manager was so informed, according to Defendants, and the error was corrected to ensure undercooked items were not served to the inmates again. (Id., ¶¶10,11).

## II. Applicable Law

Summary judgment is proper if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. See FED. R. CIV. P. 56 (a). The court views the evidence and the inferences which may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. See Adkison v. G.D. Searle & Co., 971 F.2d 132, 134 (8th Cir. 1992). The moving party has the burden of showing the absence of a genuine issue of material fact and that it is entitled to judgment as a matter of law. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

## III. Discussion

### A. Official Capacity Claims

Under Section 1983, a defendant may be sued in either his individual capacity, or in his official capacity, or claims may be stated against a defendant in both his individual and his official capacities. In Gorman v. Bartch, 152 F.3d 907 (8th Cir. 1998), the Eighth Circuit discussed the distinction between individual and official capacity suits. As explained by the Gorman case:

> Claims against government actors in their individual capacities differ from those in their official capacities as to the type of conduct that is actionable and as to the type of defense that is available. See Hafer v. Melo,

> 502 U.S. 21 (1991). Claims against individuals in their official capacities are equivalent to claims against the entity for which they work; they require proof that a policy or custom of the entity violated the plaintiff's rights, and the only type of immunity available is one belonging to the entity itself. Id. at 24-27. Personal capacity claims, on the other hand, are those which allege personal liability for individual actions by officials in the course of their duties; these claims do not require proof of any policy and qualified immunity may be raised as a defense. Id. at 25-27.

Gorman, 152 F.3d at 914.

A review of the Complaint (Doc. 1) in this case shows that Plaintiff has failed to specifically plead whether the named defendants were being sued in their official or individual capacities. However, in response to the Motion for Summary Judgment, Plaintiff stated he was suing Defendants in both their official and individual capacities. (Doc. 34, ¶20).

Plaintiff's official capacity claims are tantamount to suing Benton County because suit against a public official in his official capacity is actually a suit against the entity for which the official is an agent. Kentucky v. Graham, 473 U.S. 159, 165(1985) ("An official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. It is not a suit against the official personally, for the real party in interest is the entity.") (internal citations omitted) (emphasis in original). The plaintiff must prove that the "municipality itself caused the constitutional violation at issue." Kuha v. City of Minnetonka, 365 F.3d 590, 604 (8th Cir. 2003). Therefore, to establish the liability of an official acting in his official

-7-

capacity, the plaintiff must prove that "a policy or custom [of the city] caused the alleged violation." Rogers v. City of Little Rock, 152 F.3d 790, 800 (8th Cir. 1998).

An "official policy" is a "deliberate choice to follow a course of action made from among various alternatives by an official who is determined by state law to have the final authority to establish governmental policy." Kuha, 365 F.3d at 604 (internal quotations, citations, and alterations omitted).

Plaintiff has alleged the policy of Benton County is to not allow witnesses at the procedural due process hearings for alleged violations of the rules of the BCDC. (Doc. 34, ¶20). Moreover, Plaintiff has also alleged notice of the charges against the inmate are not received by the inmate and that the stated policy is to have "final disposition" of any incident occur within twenty-four hours of the incident, but that the United States Supreme Court has mandated at least twenty-four hour notice of the hearing. (Id.; see also, Doc. 23-6, III.A.5).

The due process requirements for disciplinary proceedings as set forth in Wolff v. McDonnell, 418 U.S. 539 (1974) include: twenty-four hours written notice to the prisoner of the charges against him; the right to appear in person before the hearing body; the right to call witnesses and present documentary evidence; and a written statement of the reasons for the disciplinary action taken. Plaintiff has raised a genuine issue of fact as to whether most, if not all, of these requirements are followed at the BCDC.

-8-

While Defendants contend procedural due process hearings occur at the BCDC, no evidence of the Wolff requirements, specifically notice and the ability to call witnesses have been addressed. Therefore I recommend Defendants' Motion for Summary Judgment be denied regarding Plaintiff's official capacity claims of denial of due process in disciplinary hearings.

However, Plaintiff has made no allegation of any custom, policy, or procedure regarding his claims of inadequate diet or denial of responses to the grievance procedure.  Thus, to the extent Plaintiff is alleging these claims against defendants in their official capacity, I recommend Defendants' Motion for Summary Judgment be granted on those claims.

### B.  Individual Capacity Claims

Plaintiff has made three individual capacity claims: that he was denied procedural due process, that he was denied an adequate diet, and that he was denied the grievance procedure.

### i.  Denial of Due Process

As noted above, the United States Supreme Court in Wolff held that due process requires that an inmate, who is the subject of a disciplinary proceeding, must receive: (1) written notice of the disciplinary charges at least 24 hours before the disciplinary hearing; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement

from an impartial decision maker identifying the evidence relied on and the reasons for the disciplinary action. See Wolff, 418 U.S. at 563-67.

Also as noted above, Plaintiff has alleged that he did not receive all of the required process before his disciplinary hearing. While Defendants have stated the policy of the BCDC is to provide all such process, Defendants have notably not provided any evidence Plaintiff was given notice of the hearing, and opportunity to call witnesses, or a written statement from an impartial decision maker. In fact, while Defendants state that the procedure requires an Inmate Disciplinary Action Form to be created and to provide notice, no such form for Plaintiff's disciplinary action has been proffered to the Court. Additionally, while there is an incident report, there is no evidence of any hearing which took place, such as minutes or the required written statement detailing the evidence relied upon and the reasons for the disciplinary action.

The Court notes that many of these factors go to the actual procedure, custom, or policy in place at the BCDC and as a result are official capacity claims. However, Plaintiff also indicates it was specifically the two named defendants who denied him the ability to call witnesses, and who failed to provide him with the proper notice. Thus, it appears from these facts that individual capacity liability could lie against the named Defendants for the alleged denial of Plaintiff's due process rights, regardless of the

outcome of any review of the policies and practices regarding disciplinary hearings in general at the BCDC. Therefore, it is my recommendation that the Motion for Summary Judgment regarding the denial of due process against Defendants in their individual capacities be denied.

### ii. Failure to Respond to Grievances

Plaintiff has alleged that he did not receive responses to his grievances, or did not receive adequate responses to those grievances. There is no constitutional right to an intra-prison grievance system and the failure to investigate or respond to a prisoner's grievances is not actionable under 42 U.S.C. § 1983. Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993)(finding no constitutional right violated by failure to process grievances). While retaliation for filing a grievance may state a constitutional claim, Plaintiff has made no such allegations of retaliation in this case.

Accordingly, I recommend Defendants' Motion for Summary Judgment be granted as to Plaintiff's individual capacity claims that he did not receive adequate responses to his grievances.

### iii. Denial of Adequate Diet

Plaintiff has alleged he was denied an adequate diet at the BCDC because on August 19, 2009, the biscuits served to the inmates were undercooked, taking away from the total calories provided to the inmates that day. Plaintiff contends Defendants, although not

the suppliers of the diet to inmates, refused to replace his inedible food.

In this circuit, the Eighth Amendment deliberate indifference standard is applied to all claims of unconstitutional conditions of confinement whether the individual involved is a pretrial detainee or a convicted inmate. Butler v. Fletcher, 465 F.3d 340, 345 (8th Cir. 2006). The Eighth Amendment's prohibition against cruel and unusual punishment is violated if an inmate is not provided with meals adequate to maintain his health. See e.g.,Wishon v. Gammon, 978 F.2d 446, 449 (8th Cir. 1992)(prisoners have a right to nutritionally adequate food); Campbell v. Cauthron, 623 F.2d 503, 508 (8th Cir. 1980)(prisoners are guaranteed a reasonably adequate diet). To prevail on an Eighth Amendment claim, Plaintiff must show the Defendants were deliberately indifferent to his dietary needs. Wishon, 978 F.2d at 449.

Merely because the food served is not prepared to an inmate's taste does not implicate the Eighth Amendment. Rather, the Eighth Amendment is only violated if the food provided is inadequate to maintain good health. See e.g., Burgin v. Nix, 899 F.2d 733, 734-35 (8th Cir. 1990)(inmates do not have a right to be served a particular type of food); see also Wilson v. Seiter, 501 U.S. 294, 298 (1991)(the deprivation of food constitutes cruel and unusual punishment only if it denies a prisoner the minimal civilized measure of life's necessities).

In this case, Plaintiff has failed to show a genuine issue of

-12-

material fact exists as to whether his constitutional rights were violated by the diet he was provided while at the BCDC. Plaintiff has alleged a single instance, where a single item on his tray was inedible. Moreover, Plaintiff has made no allegations of diminished health. Such a claim does not rise to a constitutional dimension. C.f., Johnson v. Bruce, 771 F. Supp. 327 (D. Kan. 1991), aff'd, 961 F.2d 220 (10th Cir. 1992) (holding isolated instance of serving undercooked chicken not actionable); see, Sandlin v. Walton, 1995 WL 57478, *1 (8th Cir. 1995) (affirming Sandlin's equal protection claim based on not receiving beef gravy on one occasion was frivolous). As Defendants' alleged conduct, even if true, does not amount to the denial of a nutritionally adequate diet, any Eighth Amendment claim should be dismissed. See Divers v. Department of Corrections, 921 F.2d 191, 194 (8th Cir. 1990) (per curiam).

**IV. Conclusion**

Accordingly, it is the Report and Recommendation of the undersigned that the Motion for Partial Summary Judgment (Doc. 21) be **GRANTED in part and DENIED in part.**

I recommend the motion be **granted** regarding Plaintiff's claims against Defendants, in both their individual and official capacities, that he was denied an adequate diet and adequate grievance procedure.

I recommend the motion be **denied** regarding Plaintiff's claims

against Defendants, in both their individual and official capacities, that he was denied procedural due process for disciplinary actions.

As Defendants have not moved for summary judgment regarding Plaintiff's claims of excessive force against the Defendants, I make no recommendation regarding those claims at this time.

**The parties have fourteen (14) days from receipt of this report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636 (b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger** *de novo* **review by the district court.**

**DATED** this **26th day of July 2011.**

> */s/ Erin L. Setser*
> HON. ERIN L. SETSER
> U.S. MAGISTRATE JUDGE

-14-